IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ALEX AND ANI, LLC, *et al.*,[1] | ) Case No. 21-10918 (___) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |

DECLARATION OF RYAN MERSCH
IN SUPPORT OF THE DEBTORS' MOTION
FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

I, Ryan Mersch, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (the "Cash Collateral Motion"),[2] filed with this Court on June 9, 2021 (the "Petition Date").

2. This Declaration is based on my personal knowledge or opinions or on information I obtained from the Debtors' advisors, books and records, and/or from Portage Point Partners, LLC ("Portage Point") employees working under my supervision, direction, or control.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Alex and Ani, LLC (8360); A and A Shareholding, Co., LLC (7939); Alex and Ani International, LLC (2247); Alex and Ani Retail, LLC (1227); Alex and Ani Assembly, LLC (3215); Alex and Ani California, LLC (6368); Alex and Ani Canada, LLC (3317); Alex and Ani Puerto Rico, LLC (1477); and Alex and Ani South Seas, LLC (8592). The Debtors' headquarters and mailing address is: 10 Briggs Drive, East Greenwich, RI 02818.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Cash Collateral Motion and proposed Interim Order, each as applicable.

3.    I am not being specifically compensated for this testimony other than through payments Portage Point would receive as a professional pursuant to an application to be filed at a later date. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If called to testify, I could and would competently testify to the facts set forth herein.

## Background and Qualifications

4.    I am a Director at Portage Point, which I joined in 2017 and which has its principal place of business at 300 North LaSalle Drive, Suite 1420, Chicago, Illinois 60654. At Portage Point, I have worked directly with companies and their management teams to help stabilize financial and operational performance by developing and implementing comprehensive profitability, working capital and liquidity management plans. Prior to joining Portage Point, I was an Investment Banking Analyst in the Mergers & Acquisitions Group at Lazard where I focused on valuation services and strategic alternative assessments. I hold a B.S. in Finance from the Kelley School of Business at Indiana University and am a member of the Turnaround Management Association.

5.    I have experience handling complex financial and other restructuring matters for a variety of companies (distressed or otherwise and both in and out of court) across a wide spectrum of industries. My areas of expertise include, among other things, (a) advising on financial and operational restructuring strategies, (b) sizing, structuring, raising, and executing all aspects of financing transactions, including distressed and debtor-in-possession financings, (c) facilitating sale processes both in and out of court for companies undergoing financial distress, (d) liquidity management and forecasting, contingency planning, financial modeling, developing and implementing performance improvement initiatives, and (e) complex in-court and out-of-court restructurings.

**Portage Point's Engagement**

6. The Debtors engaged Portage Point in April 2021 to serve as its financial advisor and investment banker and advise the Debtors with respect to strategic and business alternatives. Since commencing its engagement, Portage Point has provided assistance in connection with the Debtors' strategic alternatives process, including a potential sale process. Portage Point has worked closely with the Debtors' management and other restructuring professionals and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.

**The Debtors Have an Immediate Need for Use of Cash Collateral**

7. I believe that Debtors' business requires immediate access to liquidity to ensure that they are able to continue operating during these chapter 11 cases, preserve the value of their estates for the benefit of all parties in interest, and pursue value-maximizing restructuring transactions as contemplated by the RSA. I understand that all of the Debtors' available cash constitutes the Prepetition Secured Parties' Cash Collateral, and the Prepetition Secured Parties have security interests in substantially all of the Debtors' assets, including their inventory and the proceeds thereof. During these chapter 11 cases, the Debtors will need the cash generated from their assets and operations, including sales of inventory, to satisfy certain payments that are essential for the continued management, operation, and preservations of the Debtors' businesses. Without prompt access to Cash Collateral, I do not believe Debtors will be able to satisfy employee compensation obligations, satisfy trade payables incurred in the ordinary course of business, preserve and maximize the value of their estates, including by conducting a sale and marketing process, and fund the administration of these chapter 11 cases, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders. I believe

the ability to satisfy these expenses as and when due is essential to the Debtors' continued operation of their businesses during the pendency of these chapter 11 cases.

8. Against that backdrop, the Debtors negotiated with the Prepetition Secured Parties to develop a Budget, adequate protection package, and restructuring timeline that would induce the lenders to consent to the use of their Cash Collateral in light of the Debtors' circumstances. The Debtors and the Prepetition Secured Parties agreed that consensual use of Cash Collateral—not a new debtor-in-possession financing facility—was appropriate. Accordingly, the Debtors reached an agreement with the Prepetition Secured Parties regarding the consensual use of their Cash Collateral on the terms set forth in the proposed Cash Collateral Orders.

9. The Debtors, with the assistance of their advisors, developed the Budget governing their use of Cash Collateral during the period for which the Budget was prepared. As reflected in the Budget, as of the Petition Date, the Debtors have approximately $10.2 million in cash on hand, which, taking into account the costs of these chapter 11 cases, I believe will allow the Debtors to operate in bankruptcy for approximately 16 weeks without having to seek additional liquidity. Thus, I believe that the Debtors' swift emergence from these chapter 11 cases in compliance with the milestones set forth in the RSA is in the best interest of all stakeholders.

10. I also understand that all of the Debtors' $10.2 million of cash on hand is encumbered by liens in favor of the Prepetition Secured Parties. As such, I do not believe there is unencumbered cash sufficient to support the Debtors' ordinary course business operations, let alone the added costs of administering these chapter 11 cases. The Budget contains line items for each category of cash flow anticipated to be received or disbursed during this period. I believe that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of the Debtors' business for the period set forth in the Budget.

Further, I believe that the Budget establishes that the Debtors will have adequate liquidity during this period. Both the Budget and the terms of the Cash Collateral Orders are a product of extensive negotiations conducted in good faith and at arm's length among the Debtors and the Prepetition Secured Parties. I believe that the terms of the Cash Collateral Orders (and the Debtors' use of Cash Collateral thereunder) are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment.

11. It is my understanding that the Debtors propose to provide the Prepetition Secured Parties with an adequate protection package including, among other things, adequate protection liens, superpriority claims, and payment of certain fees and expenses. I believe that each form of adequate protection is appropriate under the circumstances and will adequately protect the Prepetition Secured Parties against any actual diminution in value of their interest in the Cash Collateral.

12. Because the Debtors' access to Cash Collateral is fundamental to the Debtors' continued business operations and the success of these chapter 11 cases, I believe the relief requested in the Cash Collateral Motion is necessary and appropriate to avoid immediate and irreparable harm to the Debtors' estates, and should be approved by this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Dated: June 9, 2021

/s/ Ryan Mersch
Ryan Mersch
Portage Point Partners, LLC
Director