# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ALEX AND ANI, LLC, *et al.*,[1] | ) | Case No. 21-10918 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on August 20, 2021, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Alex and Ani, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *First Amended Joint Plan of Reorganization of Alex and Ani, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Disclosure Statement for the First Amended Joint Plan of Reorganization of Alex & Ani, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order approving the Disclosure Statement, the Debtors filed the Plan Supplement with the Court on September 7, 2021. The Plan Supplement includes the following materials in connection with confirmation (each as defined in the Plan, as applicable): (a) New Organizational Documents; (b) identities of the members of the New Board; (c) Schedule of Assumed Executory Contracts and Unexpired Leases; (d) Schedule of Rejected Executory Contracts and Unexpired Leases; (e) Schedule of Retained Causes of Action; and (f) Exit Facility Documents.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Alex and Ani, LLC (8360); A and A Shareholding, Co., LLC (7939); Alex and Ani International, LLC (2247); Alex and Ani Retail, LLC (1227); Alex and Ani Assembly, LLC (3215); Alex and Ani California, LLC (6368); Alex and Ani Canada, LLC (3317); Alex and Ani Puerto Rico, LLC (1477); and Alex and Ani South Seas, LLC (8592). The Debtors' headquarters and mailing address is: 10 Briggs Drive, East Greenwich, RI 02818.

[2]  Capitalized terms used and not defined have the meanings given to them in the Disclosure Statement and Plan, as applicable.

**September 22, 2021 at 1:00 p.m.** prevailing Eastern Time, before the Honorable Craig T. Goldblatt, in the United States Bankruptcy Court for the District of Delaware, located at located at 824 Market Street, 3rd Floor, Courtroom No. 7, Wilmington, Delaware 19801.

      **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **September 14, 2021, at 4:00 p.m.** prevailing Eastern Time (the "<u>Plan Objection Deadline</u>").  Any objection to the Plan **<u>must</u>**:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **<u>actually received</u>** on or before **September 14, 2021, at 4:00 p.m.** prevailing Eastern Time:

| Debtors | Counsel to the Debtors |
|---|---|
| Alex and Ani, LLC<br>10 Briggs Drive<br>East Greenwich, RI 02818<br>Attn.:  Robert Trabucco, CRO | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Joshua A. Sussberg, P.C.<br>     Allyson B. Smith<br>-and-<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn:  Alexandra Schwarzman<br><br>-and-<br><br>Klehr Harrison Harvey Branzburg LLP<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Attn:  Domenic E. Pacitti<br>     Michael W. Yurkewicz<br>     Sally E. Veghte |
| **Counsel to the Consenting Sponsor** | **United States Trustee** |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 6th Avenue<br>New York, New York 10019<br>Atten:  Paul M. Basta<br>     Elizabeth R. McColm<br>     Grace Hotz<br><br>- and -<br><br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn.: Pauline K. Morgan<br>     Sean Greecher | Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn.:  David Buchbinder |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consulting, LLC, the Solicitation Agent retained by the Debtors in these chapter 11 cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring  hotline at (888) 733-1434 **(Domestic)** or (310) 751-2633 **(International)**; (b) visiting the Debtors' restructuring website at: https://www.kccllc.net/alexandani; and/or (c) writing to Alex and Ani, LLC Ballot Processing, c/o Kurtzman Carson Consulting, LLC, 222 N. Pacific Coast, Highway, Ste 300, El Segundo CA 90245  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.deb.uscourts.gov.

---

**Article IX** of the Plan contains Release, Exculpation, and
Injunction Provisions, and **Article IX contains a Third-Party Release**.
**Thus, you are advised to review and consider the Plan carefully because your rights might be affected thereunder.**

**This Notice is being sent to you for informational purposes only.  If you have questions with respect to your rights under the Plan or about anything stated herein or if you would like to obtain additional information, contact the Solicitation Agent.**

---

Dated: September 7, 2021

*/s/ Domenic E. Pacitti*

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:          dpacitti@klehr.com
                   myurkewicz@klehr.com
                   sveghte@klehr.com

- and -

Morton R. Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:          mbranzburg@klehr.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          joshua.sussberg@kirkland.com
Email:          allyson.smith@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ALEX AND ANI, LLC, *et al.*,[1] | ) | Case No. 21-10918 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## PLAN SUPPLEMENT FOR THE FIRST AMENDED JOINT PLAN
## OF REORGANIZATION OF OF ALEX AND ANI, LLC. AND ITS DEBTOR
## AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this plan supplement (this "Plan Supplement") in support of, and in accordance with, the *First Amended Joint Plan of Reorganization of Alex and Ani, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 369] (as modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan. The documents contained in this Plan Supplement are integral to, part of, and incorporated by reference into the Plan. These documents have not yet been approved by the Bankruptcy Court. If the Plan is confirmed by the Bankruptcy Court, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Alex and Ani, LLC (8360); A and A Shareholding, Co., LLC (7939 ); Alex and Ani International, LLC (2247); Alex and Ani Retail, LLC (1227); Alex and Ani Assembly, LLC (3215); Alex and Ani California, LLC (6368); Alex and Ani Canada, LLC (3317); Alex and Ani Puerto Rico, LLC (1477); and Alex and Ani South Seas, LLC (8592). The Debtors' headquarters and mailing address is: 10 Briggs Drive, East Greenwich, RI 02818.

## CONTENTS

This Plan Supplement contains the following documents, each as may be amended, modified, or supplemented from time to time by the Debtors in accordance with the Plan as set forth below:

| Exhibit | Description |
| --- | --- |
| A | New Organizational Documents |
| B | Identities of the Members of the New Board |
| C | Schedule of Assumed Executory Contracts and Unexpired Leases |
| D | Schedule of Rejected Executory Contracts and Unexpired Leases |
| E | Schedule of Retained Causes of Action |
| F | Exit Facility Documents |

**Certain documents, or portions thereof, contained or referenced in this Plan Supplement remain subject to continuing negotiations among the Debtors and parties in interest, including the Consenting Sponsor. The Debtors reserve all rights, with the consent of any applicable counterparties to the extent required under the Plan and/or the Restructuring Support Agreement, to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein in accordance with the terms of the Plan, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.**

## Exhibit A

### New Organizational Documents

This **Exhibit A** contains the New Organizational Documents, which are subject to continued review and revision, and all parties' rights are reserved.

The New Organizational Documents will be included in an amended plan supplement.

**<u>Exhibit B</u>**

**Members of the New Board**

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the members of the New Board will be identified at or prior to the Confirmation Hearing.  The constitution and size of the New Board shall be determined by the Consenting Sponsor.

In accordance with Article IV.C.9. of the Plan and section 1129(a)(5) of the Bankruptcy Code, to the extent known, the Debtors will disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial board of directors or be an officer of any of the Reorganized Debtors.  To the extent any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

## **Exhibit C**

**Schedule of Assumed Executory Contracts and Unexpired Leases**

This **Exhibit C** contains the Schedule of Assumed Executory Contracts and Unexpired Leases, which is subject to continued review and revision, and all parties' rights are reserved.  All cure amounts are subject to ongoing discussion and written confirmation, and for the avoidance of doubt, remain subject to change.

**Alex and Ani**
*Assumed Contract Cure Summary*

| Vendor Name | Est. Cure Amount | Assume / Reject | Expiration Date | Contract Type |
|---|---|---|---|---|
| Abel Womack | $ 275 | Assume | NA | IT |
| Afterpay US, Inc. | - | Assume | 7/12/2022 | IT |
| American Customer Care, Inc. | 10,418 | Assume | 1/31/2022 | Marketing |
| Army (Beanstalk) | 1,849 | Assume | 6/30/2022 | Royalties |
| Booxi Inc. | - | Assume | NA | IT |
| Brightedge Technologies Inc | - | Assume | 11/3/2022 | Marketing |
| Carousel Industries | 7,974 | Assume | 3/31/2022 | IT |
| Cartful Solutions, Inc. | - | Assume | 11/22/2021 | IT |
| CBRE, Inc. | - | Assume | 11/21/2021 | Utilities |
| CENTURYLINK | - | Assume | 9/12/2021 | IT |
| CERIDIAN - DAYFORCE | - | Assume | 12/30/2022 | IT |
| Channeladvisor Corporation | 6,222 | Assume | 5/31/2022 | Marketing |
| Collegiate Licensing Company LLC | - | Assume | NA | Royalties |
| Concur Technologies Inc | 6,041 | Assume | NA | Wages |
| CONNECTICUT BUSINESS SYSTEMS | - | Assume | 12/21/2022 | IT |
| Corra Technology, Inc. | 18,581 | Assume | 4/15/2022 | IT |
| CORSEARCH | - | Assume | NA | IT |
| Cox Communications | 3,265 | Assume | 12/2/2023 | IT |
| CRADLEPOINT | - | Assume | NA | IT |
| Curalate Inc | 60,000 | Assume | 3/29/2022 | Marketing |
| Datapipe Inc | 23,622 | Assume | 7/31/2022 | IT |
| Denovo Ventures | - | Assume | 7/18/2022 | IT |
| Department of the Army | - | Assume | 6/30/2022 | Royalties |
| Department of the Navy | 3,172 | Assume | 6/30/2021 | Royalties |
| Disney Consumer Products Inc | 28,396 | Assume | 12/31/2023 | Royalties |
| Disney Theme Park Merchandise | 29,140 | Assume | 6/14/2019 | Royalties |
| DocuSign, Inc. | - | Assume | 9/9/2023 | IT |
| Encore Fire Protection | - | Assume | 12/30/2022 | Utilities |
| Environmental Systems  Inc | 2,798 | Assume | 9/14/2021 | Facilities & Utilities |
| Expivi | - | Assume | 5/6/2022 | IT |
| Fanatics Licensing Management, LLC | 4,678 | Assume | 12/31/2021 | Royalties |
| FedEx | - | Assume | NA | Operations |
| GBT US LLC d/b/a American Express Global Business Travel | - | Assume | NA | IT |
| Gravotech Inc | 731 | Assume | 12/31/2022 | IT |
| GXS INC. | 10,308 | Assume | NA | IT |
| HBO | - | Assume | NA | Royalties |
| Huntington Technology Finance | 19,067 | Assume | 2/28/2022 | IT |
| Learfield IMG College | - | Assume | NA | Royalties |
| Listrak Inc | 9,475 | Assume | 4/30/2022 | Marketing |
| Local Color | 19,840 | Assume | NA | Marketing |
| Logic Information Systems Inc | 165,960 | Assume | 5/31/2022 | IT |
| Loomis | 7,690 | Assume | NA | IT |
| MASERGY COMMUNICATIONS INC | - | Assume | Month-to-Month | IT |
| Mattel Europa B.V. | - | Assume | 12/31/2021 | Royalties |
| Mattel, Inc. | 4,059 | Assume | 12/31/2021 | Royalties |
| Microsoft Corporation | 203,218 | Assume | 6/21/2022 | IT |
| MLB Advanced Media, L.P. | 9,103 | Assume | NA | Royalties |
| NBC Universal | - | Assume | 12/31/2022 | Royalties |
| Net@Work | - | Assume | 5/30/2022 | IT |
| NUORDER | - | Assume | 8/22/2021 | IT |
| Ohio State University | 1,423 | Assume | 6/30/2022 | Royalties |
| One Entertainment Group, LLC | 2,434 | Assume | 12/31/2021 | Royalties |
| Oracle America Inc | - | Assume | 9/30/2023 | IT |
| Peanuts | - | Assume | 6/30/2022 | Royalties |
| Pitney Bowes Inc. | - | Assume | NA | IT |
| Progress Software Corp | - | Assume | 8/14/2022 | IT |
| ProShip, Inc. | - | Assume | NA | Freight & Packaging |
| Pulse Microsystems Ltd. | - | Assume | 2/28/2022 | IT |
| Rackspace US, Inc | - | Assume | 5/23/2022 | IT |
| Razgate Financial, LLC | - | Assume | NA | Utilities |
| Sanrio Compnay, Ltd | 2,995 | Assume | 12/31/2021 | Royalties |
| SEARCHSPRING | - | Assume | 3/30/2022 | IT |
| SHOPIFY INC | - | Assume | 12/26/2021 | IT |
| Smartsheet Inc. | 34,493 | Assume | 4/29/2022 | IT |
| Socialfly LLC | 2,801 | Assume | 9/30/2021 | Marketing |
| Softeon Inc | 98,358 | Assume | 1/31/2022 | IT |
| SOLARWINDS INC | - | Assume | 2/9/2022 | IT |
| Spectrotel | 243 | Assume | 11/18/2021 | IT |

DRAFT

**Alex and Ani**
*Assumed Contract Cure Summary*

| Vendor Name | Est. Cure Amount | Assume / Reject | Expiration Date | Contract Type |
|---|---|---|---|---|
| Spectrotel Holding Company, LLC | - | Assume | NA | Utilities |
| Spectrotel of Alabama, LLC | - | Assume | NA | Utilities |
| Spectrotel of Maryland, LLC | - | Assume | NA | Utilities |
| Spectrotel of New England, LLC | - | Assume | NA | Utilities |
| Spectrotel of New Jersey, LLC | - | Assume | NA | Utilities |
| Spectrotel of New York, LLC | - | Assume | NA | Utilities |
| Spectrotel of Pennsylvania, LLC | - | Assume | NA | Utilities |
| Spectrotel of the SE, LLC | - | Assume | NA | Utilities |
| Spectrotel of Virginia, LLC | - | Assume | NA | Utilities |
| Storeforce Solutions Inc | 8,679 | Assume | 12/30/2022 | IT |
| TENABLE INC | - | Assume | 6/17/2022 | IT |
| TRAF SYS | - | Assume | 12/30/2021 | IT |
| Tresmore | - | Assume | NA | IT |
| True Commerce | - | Assume | 12/30/2021 | IT |
| Trustwave Holdings Inc | 11,445 | Assume | 10/1/2023 | IT |
| United Parcel Service, Inc. | - | Assume | NA | Operations |
| United States Coast Guard | - | Assume | 3/1/2022 | Royalties |
| United States Marine Corps | 775 | Assume | 9/30/2022 | Royalties |
| United States Olympic & Paralympic Committee | 17,220 | Assume | NA | Royalties |
| United States Olympic Committee | - | Assume | 12/31/2012 | Royalties |
| University of Iowa | 160 | Assume | 12/31/2021 | Royalties |
| Vaso | 6,726 | Assume | 11/30/2021 | IT |
| VERIFONE INC. | - | Assume | 1/31/2022 | IT |
| Viacom/Nickelodeon | - | Assume | 6/30/2022 | Royalties |
| Viscom Systems Inc | 2,368 | Assume | 5/1/2021 | Facilities & Utilities |
| Warner Bros Consumer Products Inc | 125,826 | Assume | 12/31/2022 | Royalties |
| Wynright Corporation | - | Assume | 8/31/2021 | IT |
| Yotpo Inc | 18,207 | Assume | 9/30/2022 | Marketing |
| Zebrafish Labs Inc. DBA Imgix | 493 | Assume | 5/1/2022 | IT |
| **Total** | **$ 990,527** | | | |

DRAFT

**Alex and Ani**
*Assumed Lease Cure Schedule*

| Location | Landlord | Assume / Reject | Effective Date | Est. Cure Amount |
|---|---|---|---|---|
| Cherry Hill Mall | PREIT | Assume | 6/2/2016 | $ 60,647 |
| Partridge Creek | JLL, Inc | Assume | 11/19/2012 | 21,675 |
| Miracle Mile | Boulevard Invest LLC | Assume | 11/19/2014 | 17,528 |
| Disney Springs | Walt Disney Parks & Resorts | Assume | 1/12/2016 | 17,124 |
| Plaza Del Caribe | Plaza Las Americas | Assume | 2/26/2021 | 15,287 |
| McCarran C-Gates | McCarran | Assume | 2/18/2017 | 1,609 |
| McCarran D-Gates | McCarran | Assume | 5/6/2014 | 1,609 |
| Beachwood Place | Brookfield | Assume | 6/13/2016 | - |
| Boca Raton | Simon Property Group | Assume | 10/5/2015 | - |
| Brea Mall | Simon Property Group | Assume | 11/7/2017 | - |
| Christiana Mall | Brookfield | Assume | 2/22/2016 | - |
| Dadeland Mall | Simon Property Group | Assume | 12/21/2016 | - |
| Del Amo Fashion Center | Simon Property Group | Assume | 4/14/2017 | - |
| Fashion Show Mall | Brookfield | Assume | 2/12/2016 | - |
| Jersey Gardens Outlet | Simon Property Group | Assume | 8/23/2016 | - |
| Kenwood Towne Centre | Brookfield | Assume | 4/20/2017 | - |
| King of Prussia | Simon Property Group | Assume | 6/13/2017 | - |
| Lenox Square | Simon Property Group | Assume | 8/11/2015 | - |
| Mayfair Mall | Brookfield | Assume | 8/15/2016 | - |
| Miami International Mall | Simon Property Group | Assume | 11/2/2016 | - |
| Natick Mall | Brookfield | Assume | 11/20/2018 | - |
| National Harbor | Peterson | Assume | 4/27/2017 | - |
| North Premium Outlet | Simon Property Group | Assume | 9/20/2017 | - |
| Oakbrook Center | Brookfield | Assume | 3/9/2016 | - |
| Orland Square | Simon Property Group | Assume | 12/22/2015 | - |
| Perimeter Mall | Brookfield | Assume | 11/20/2018 | - |
| Plaza Las Americas | Plaza Las Americas | Assume | 2/26/2021 | - |
| Roosevelt Field | Simon Property Group | Assume | 4/23/2015 | - |
| Ross Park Mall | Simon Property Group | Assume | 11/3/2016 | - |
| Sawgrass Mills Outlet | Simon Property Group | Assume | 9/5/2018 | - |
| Short Pump | Brookfield | Assume | 6/23/2015 | - |
| SouthPark | Simon Property Group | Assume | 11/3/2015 | - |
| The Falls | Simon Property Group | Assume | 6/17/2015 | - |
| Towson Town Center | Brookfield | Assume | 8/30/2016 | - |
| Twelve Oaks | Taubman | Assume | 6/30/2015 | - |
| Venetian | Brookfield | Assume | 10/21/2014 | - |
| Water Tower Place | Brookfield | Assume | 11/20/2018 | - |
| Whalers Village | Brookfield | Assume | 10/23/2015 | - |
| Woodfield Mall | Simon Property Group | Assume | 12/22/2016 | - |
| **Total** | | | | $ 135,479 |

**Exhibit D**

**Schedule of Rejected Executory Contracts and Unexpired Leases**

This **Exhibit D** contains the Schedule of Rejected Executory Contracts and Unexpired Leases, which is subject to continued review and revision, and all parties' rights are reserved.

**Alex and Ani**
*Rejected Contract Summary*

| Vendor Name | Assume / Reject | Expiration Date | Contract Type |
|---|---|---|---|
| Alex's Lemonade Stand | Reject | 12/31/2029 | Charity |
| Alex's Lemonade Stand | Reject | 12/4/2019 | Charity |
| American Cancer Society | Reject | 12/4/2019 | Charity |
| American Heart Association | Reject | 12/4/2019 | Charity |
| Armenia Fund | Reject | 12/31/2029 | Charity |
| Armenia Fund | Reject | 12/4/2019 | Charity |
| ASPCA | Reject | 12/4/2019 | Charity |
| Association of Zoos & Aquariums | Reject | 12/31/2029 | Charity |
| Association of Zoos & Aquariums | Reject | 12/4/2019 | Charity |
| BCRF | Reject | 12/4/2019 | Charity |
| Best Friends Animal Society | Reject | 12/31/2029 | Charity |
| Best Friends Animal Society | Reject | 12/4/2019 | Charity |
| Boston Celtics Shamrock Foundation | Reject | 12/31/2029 | Charity |
| Boston Celtics Shamrock Foundation | Reject | 12/4/2019 | Charity |
| Child Mind Institute | Reject | 12/31/2029 | Charity |
| Child Mind Institute | Reject | 12/4/2019 | Charity |
| Children's Miracle Network Hospitals | Reject | 12/31/2029 | Charity |
| Children's Miracle Network Hospitals | Reject | 12/4/2019 | Charity |
| DLF | Reject | 12/4/2019 | Charity |
| Edesia | Reject | 12/31/2029 | Charity |
| Edesia | Reject | 12/4/2019 | Charity |
| Every Mother Counts | Reject | 12/31/2029 | Charity |
| Every Mother Counts | Reject | 12/4/2019 | Charity |
| Friends of Jaclyn | Reject | 12/31/2029 | Charity |
| Friends of Jaclyn | Reject | 12/4/2019 | Charity |
| Girls on the Run | Reject | 12/4/2019 | Charity |
| Habitat for Humanity | Reject | 12/4/2019 | Charity |
| Hasbro Children's Hospital | Reject | 12/31/2029 | Charity |
| Hasbro Children's Hospital | Reject | 12/4/2019 | Charity |
| Helen Keller International | Reject | 12/31/2029 | Charity |
| Helen Keller International | Reject | 12/4/2019 | Charity |
| Incopro | Reject | 8/31/2021 | IT |
| JDRF | Reject | 12/31/2029 | Charity |
| JDRF | Reject | 12/4/2019 | Charity |
| LINA | Reject | NA | Insurance |
| Living Water International | Reject | 12/31/2029 | Charity |
| Living Water International | Reject | 12/4/2019 | Charity |
| Make-A-Wish America | Reject | 12/31/2029 | Charity |
| Make-A-Wish America | Reject | 12/4/2019 | Charity |
| Malala Fund | Reject | 12/31/2029 | Charity |
| Malala Fund | Reject | 12/4/2019 | Charity |
| March of Dimes | Reject | 12/4/2019 | Charity |
| National Autism Association | Reject | 12/31/2029 | Charity |
| National Autism Association | Reject | 12/4/2019 | Charity |
| National Eating Disorders Association | Reject | 12/31/2029 | Charity |
| National Eating Disorders Association | Reject | 12/4/2019 | Charity |
| Ocean Unite | Reject | 12/4/2019 | Charity |
| Pan-Mass Challenge | Reject | 12/31/2029 | Charity |
| Pan-Mass Challenge | Reject | 12/4/2019 | Charity |
| Peace Love Foundation | Reject | 12/31/2029 | Charity |
| Peace Love Foundation | Reject | 12/4/2019 | Charity |
| Pepperjam Llc | Reject | 8/31/2021 | Marketing |
| Race to Erase MS | Reject | 12/31/2029 | Charity |
| Race to Erase MS | Reject | 12/4/2019 | Charity |
| RED | Reject | 12/4/2019 | Charity |
| Roger Williams Park Zoo | Reject | 12/31/2029 | Charity |
| Roger Williams Park Zoo | Reject | 12/4/2019 | Charity |
| Safe Kids Worldwide | Reject | 12/31/2029 | Charity |

DRAFT

**Alex and Ani**
*Rejected Contract Summary*

| Vendor Name | Assume / Reject | Expiration Date | Contract Type |
|---|---|---|---|
| Safe Kids Worldwide | Reject | 12/4/2019 | Charity |
| Servicechannel.Com Inc | Reject | 11/30/2021 | IT |
| SOS Children's Villages | Reject | 12/31/2029 | Charity |
| SOS Children's Villages | Reject | 12/4/2019 | Charity |
| Special Olympics | Reject | 12/31/2029 | Charity |
| Special Olympics | Reject | 12/4/2019 | Charity |
| Team Red White & Blue | Reject | 12/31/2029 | Charity |
| Team Red White & Blue | Reject | 12/4/2019 | Charity |
| The Nature Conservancy | Reject | 12/31/2029 | Charity |
| The Nature Conservancy | Reject | 12/4/2019 | Charity |
| Tuesday's Children | Reject | 12/31/2029 | Charity |
| Tuesday's Children | Reject | 12/4/2019 | Charity |
| UNICEF | Reject | 12/31/2029 | Charity |
| UNICEF | Reject | 12/4/2019 | Charity |
| United States Air Force | Reject | 3/31/2021 | Royalties |
| VH1 Save the Music Foundation | Reject | 12/31/2029 | Charity |
| VH1 Save the Music Foundation | Reject | 12/4/2019 | Charity |
| Webscale Enterprise | Reject | NA | IT |
| Women & Infants Hospital | Reject | 12/31/2029 | Charity |
| Women & Infants Hospital | Reject | 12/4/2019 | Charity |
| World Wildlife Fund | Reject | 12/31/2029 | Charity |
| World Wildlife Fund | Reject | 12/4/2019 | Charity |

DRAFT

**Alex and Ani**
*Rejected Lease Schedule*

| Location | Landlord | Assume / Reject | Effective Date |
|---|---|---|---|
| Ala Moana | Brookfield | Reject | 10/23/2015 |
| Briggs Warehouse | Briggs Drive Associates | Reject | 9/1/2014 |
| Glendale Galleria | Brookfield | Reject | 9/14/2018 |
| Los Cerritos | Macerich | Reject | 8/30/2018 |
| Plaza Del Caribe | Plaza Las Americas | Reject | 10/27/2015 |
| Plaza Las Americas | Plaza Las Americas | Reject | 9/17/2015 |
| Somerset Collection | Forbes | Reject | 2/25/2017 |
| Tysons Corner | Macerich | Reject | 2/2/2016 |

## Exhibit E

### Schedule of Retained Causes of Action

Article IV.G of the Plan provides as follows:

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, the Reorganized Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article IX of the Plan. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding and without limiting the generality of Article IV.G of the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action, including the following types of claims:

## I.    Claims Related to Contracts and Leases

Unless otherwise released by the Plan, the Debtors and Reorganized Debtors, as applicable, expressly reserve Causes of Action based in whole or in part upon any and all contracts and leases to which any of the Debtors or Reorganized Debtors is a party or pursuant to which any of the Debtors or Reorganized Debtors has any rights whatsoever (regardless of whether such contract or lease is specifically identified in the Plan, this Plan Supplement, or any amendments thereto), including without limitation all contracts and leases that are assumed pursuant to the Plan or were previously assumed by the Debtors. The claims and Causes of Action reserved include, but are not limited to, Causes of Action against vendors, suppliers of goods and services, lessors, lessees, and licensees, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, reimbursement, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including mechanics', artisans', materialmens', possessory, or statutory liens held by any one or more of the Debtors; (f) arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies, or suppliers of environmental services or goods; (g) for counter-claims and defenses related to any contractual obligations; (h) for any turnover actions arising under section 542 or 543 of the Bankruptcy Code; and (i) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property or any business tort claims. Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

## II.    Claims Related to Insurance Policies

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers, as applicable, relating to coverage, indemnity, contribution, reimbursement, or any other matters. Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

III.    **Claims Related to Accounts Receivable and Accounts Payable**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, regardless of whether such Entity is expressly identified in the Plan, this Plan Supplement, or any amendments thereto. Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors, as applicable, owe money to them. Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

IV.    **Claims Related to Deposits/Prepayments, Adequate Assurance Postings, and Other Collateral Postings**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral, regardless of whether such posting of security deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral is expressly identified in the Plan, this Plan Supplement, or any amendments thereto.[1] Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

V.    **Claims Related to Liens**

Unless otherwise released by the Plan or the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Grating Related Relief* [Docket No. 303], the Debtors expressly reserve all Causes of Action based in whole or in part upon any and all liens regardless of whether such lien is expressly identified in the Plan, this Plan Supplement, or any amendments thereto. Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

VI.    **Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Potential Litigation**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether

---

[1]    For the avoidance of doubt, the Debtors reserve all rights with respect to any deposit provided in accordance with the *Final Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Additional Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 252] or otherwise provided as "adequate assurance of payment" (as that term is used by Section 366 of the Bankruptcy Code).

formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.  Without limiting the generality of the foregoing, the Debtors' expressly reserve all Causes of Action identified and against the Entities identified in **Exhibit E** attached hereto.

## VII.    Claims Related to Tax Obligations

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action based in whole or in part upon any and all tax obligations to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, including, without limitation, against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors or the Reorganized Debtors or relating to any and all audits involving any of the Debtors or the Reorganized Debtors, regardless of whether such Entity is specifically identified herein.  Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

## VIII.    Claims Related to Customer Obligations

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action against or related to all former and current customers that owe or may in the future owe money to the Debtors or the Reorganized Debtors whether for unpaid invoices or any other matter whatsoever, including contracts.  Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

## IX.    Claims Related to Employment Matters

Unless otherwise released by the Plan, the Debtors expressly reserve all actual or potential Causes of Action, whether legal, equitable or statutory in nature, to recover amounts awarded to employees (except for amounts authorized by order of the Bankruptcy Court or required by applicable non-bankruptcy law) under the terms of any prepetition employment, severance agreement, change-in-control agreement, bonus arrangement or other agreement governing, arising out of, or related to the employment relationship.  Furthermore, the Debtors expressly reserve all Causes of Action against any current or former director, officer, employee or agent of the Debtors arising out of employment-related matters, including Causes of Action regarding intellectual property, confidentiality obligations, employment contracts, wage and benefit overpayments, travel, contractual covenants, or employee fraud or wrongdoing.  Without limiting the generality of the foregoing, the Debtors expressly reserve all Causes of Action against the Entities identified in **Schedule E** attached hereto.

**Alex and Ani**
*Retained Causes of Action*

| Case No. | Party Name | Type of Case | Court / Retail Location | Total $ in Controversy (as of date listed) | Opposing Counsel | Local Counsel | Court | Court Address | Case Caption |
|---|---|---|---|---|---|---|---|---|---|
| DC-111-20 | Adorn Me | Collection; Breach of Contract | NJ | $ 3,527.54 | Timothy Trainor Roinart, LLC 2806 South Eagle Road Newtown, PA 18940 | Brian E. Kasper Stark & Stark, Attorneys at Law 993 Lenox Dr, Building 2 Lawrenceville, NJ 08648 Phone: (609) 945-7624 | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SPECIAL CIVIL PART MERCER COUNTY | 175 South Broad St. Trenton, NJ 08650-0068 | Alex & Ani, LLC, a Rhode Island limited liability company, Plaintiff v. Adorn Me and Connie Trainor, Defendants |
| 3CA-2019-02277 | Bay Jewelers | Collection; Breach of Contract | RI | NA | | Richard S. Humphrey Richard S. Humphrey Law Office 3852 Main Road Triverton, RI 02878 Phone: (401) 624-6152 | State of Rhode Island District Court Kent County | Noel Judicial Complex, 222 Quaker Ln, Warwick, RI 02886 | Alex & Ani, LLC, a Rhode Island limited liability company, Plaintiff v. Bay Jewelers, LLC, Defendant |
| PC-2019-1056 | Magnolia's on Main/Hampton House | Collection; Breach of Contract | RI | 20,718.08 | Shelly Miles 245 South Main Street Springboro, OH 45066 Email: Hamptonhouseboutique@gmail.com | Richard S. Humphrey Richard S. Humphrey Law Office 3852 Main Road Triverton, RI 02878 Phone: (401) 624-6152 | Providence/Bristol County Superior Court | 250 Benefit St, Providence, RI 02903 | Alex & Ani, LLC, a Rhode Island limited liability company, Plaintiff v. Magnolia's on Main, LLC d/b/a Hampton House Boutique, Defendant |
| PC-2018-4586 | Sophy Jewelers | Collection; Breach of Contract | RI | 30,688.39 | | Richard S. Humphrey Richard S. Humphrey Law Office 3852 Main Road Triverton, RI 02878 Phone: (401) 624-6152 | State of Rhode Island District Court Providence County | 1 Dorrance St, Providence, RI 02903 | Alex & Ani, LLC, a Rhode Island limited liability company, Plaintiff v. Sophy Jewelers, LLC, Defendant |
| L-2958-20 | Wolf Fine Jewelers | Collection; Breach of Contract | NJ | NA | | Brian E. Kasper Stark & Stark, Attorneys at Law 993 Lenox Dr, Building 2 Lawrenceville, NJ 08648 Phone: (609) 945-7624 | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CIVIL PART MONMOUTH COUNTY | 71 Monument St, Freehold, NJ 07728 | Alex & Ani, LLC, a Rhode Island limited liability company, Plaintiff v. WOLF FINE JEWELERS AC LLC, a New Jersey limited liability company, Defendant |

## **Exhibit F**

**Exit Facility Documents**

 This **Exhibit F** contains the Exit Promissory Note.  The Exit Promissory Note remains subject to ongoing review and revision, and all parties' rights are reserved.

*Draft 9.7.2021*

# PROMISSORY NOTE

[●], 2021

$[●]

  FOR VALUE RECEIVED, Alex and Ani, LLC (the "**Borrower**"), promises to pay to the order of LC A&A Holdings, Inc. (the "**Lender**") on the date set forth in Section 2, in lawful money of the United States in same day funds, $[●] ([●] dollars) (the "**Loan**"; and this note, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, this "**Note**"). The Borrower shall pay interest on the unpaid principal amount of the Loan and any overdue amounts thereon until paid in full on the dates and at a rate per annum as hereinafter set forth. Interest hereunder shall be computed on the basis of a year of 365/366 days and paid for the actual number of days elapsed (including the first day but excluding the last day).

  1. *Certain Definitions.* As used herein, the following terms have the following meanings:

  "**Alex and Ani Lines of Business**" means the manufacturing, sale and/or distribution of jewelry, and any other business which is substantially related or complementary thereto (including, without limitation, the manufacturing, sale and/or distribution of apparel, footwear, accessories, home furnishings, housewares and other retail consumer products) as determined by the Borrower in its business judgment.

  "**Allowed**" has the meaning assigned in the Plan.

  "**Administrative Claim**" has the meaning assigned in the Plan.

  "**Assignee**" has the meaning assigned in Section 16.

  "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

  "**Borrower**" has the meaning assigned in the preamble to this Note.

  "**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks are authorized or required to close under the law of, or are in fact closed in, the state of New York.

  "**Capital Expenditures**" means, with respect to any Person for any period, any expenditure in respect of the purchase or other acquisition of any fixed or capital asset (excluding normal replacements and maintenance which are properly charged to current operations). For purposes of this definition, the purchase price of equipment that is purchased simultaneously with the trade-in of existing equipment or with insurance proceeds shall be included in Capital Expenditures only to the extent of the gross amount by which such purchase price exceeds the credit granted by the seller of such equipment for the equipment being traded in at such time or the amount of such insurance proceeds, as the case may be.

"**Collateral**" means the "Collateral" referred to in the Collateral Documents and all of the other property that is or is intended under the terms of the Collateral Documents, the Plan, and the Confirmation Order to be subject to Liens in favor of the Lender.

"**Collateral Documents**" means, collectively, the Security Agreement, each of the collateral assignments, security agreements, pledge agreements, or other similar agreements delivered to the Lender pursuant to the Security Agreement and the other Loan Documents, and each of the other agreements, instruments, or documents that creates or purports to create a Lien in favor of the Lender under the Loan Documents.

"**Confirmation Order**" means the order entered by the Bankruptcy Court on [●], 2021 confirming the Plan, together with any amendments, supplements or modifications thereto.

"**Debtor Relief Laws**" means the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief Laws of the United States or other applicable jurisdictions from time to time in effect.

"**Default**" means a condition that, after written notice or lapse of time or both, would constitute an Event of Default.

"**Disclosure Statement**" means the *Disclosure Statement for the First Amended Joint Plan of Reorganization of Alex and Ani, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of August 20, 2021, filed in *In re Alex and Ani, LLC*, et al., case no. 21-10918 (CTG) (jointly administered), in the Bankruptcy Court, as amended, supplemented or modified from time to time.

"**Environmental Laws**" means any and all federal, state, local and foreign statutes, laws, regulations, ordinances, rules, judgments, orders, decrees, permits, concessions, grants, franchises, licenses, agreements or governmental restrictions relating to pollution and the protection of the environment or the release of any materials into the environment, including those related to hazardous substances or wastes, air emissions and discharges to waste or public systems.

"**Event of Default**" has the meaning assigned in Section 12.

"**GAAP**" means generally accepted accounting principles in the United States set forth from time to time in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board (or agencies with similar functions of comparable stature and authority within the accounting profession) including, without limitation, the FASB Accounting Standards Codification, that are applicable to the circumstances as of the date of determination, consistently applied.

"**Governmental Authority**" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to

government (including, without limitation, any supra-national bodies such as the European Union or the European Central Bank).

"**Guarantee Agreement**" means the [Guarantee Agreement], dated as of the date hereof, executed by each of the Guarantors in favor of the Lender.

"**Guarantees**" means, collectively, the guaranty by each of the Guarantors pursuant to the Guarantee Agreement.

"**Guarantors**" means, collectively, (i) Holdings, (ii) Alex and Ani International, LLC, (iii) Alex and Ani Assembly, LLC, (iv) Alex and Ani Retail, LLC, (v) Alex and Ani Canada, LLC, (vi) Alex and Ani Puerto Rico, LLC, (vii) Alex and Ani South Seas, LLC, and (viii) Alex and Ani California, LLC, and (ix) each other Person that guarantees the Loan.

"**Holdings**" means A and A Shareholding Co., LLC.

"**Indebtedness**" means, as to any Person at a particular time, without duplication, all of the following, whether or not included as indebtedness or liabilities in accordance with GAAP:

(a)     all obligations of such Person for borrowed money and all obligations of such Person evidenced by bonds, debentures, notes, loan agreements or other similar instruments;

(b)     the maximum amount of all direct or contingent obligations of such Person arising under letters of credit (including standby), bankers' acceptances, bank guaranties, surety bonds and similar instruments;

(c)     net obligations of such Person under any swap contract, forward contract, option contract, derivative transaction, or similar transaction or agreement;

(d)     all obligations (including, without limitation, earnout obligations) of such Person to pay the deferred purchase price of property or services (other than trade accounts payable in the ordinary course of business and not past due for more than sixty (60) days after the date on which such trade account was created);

(e)     indebtedness (excluding prepaid interest thereon) secured by a Lien on property owned or being purchased by such Person (including indebtedness arising under conditional sales or other title retention agreements), whether or not such indebtedness shall have been assumed by such Person or is limited in recourse;

(f)     the capitalized amount of any capital lease that would appear on a balance sheet of such Person as of such date in accordance with GAAP;

(g)     all obligations of such Person to purchase, redeem, retire, defease or otherwise make any payment in respect of any equity interest in such Person or any other Person or any warrant, right or option to acquire such equity interest, valued,

3

in the case of a redeemable preferred interest, at the greater of its voluntary or involuntary liquidation preference plus accrued and unpaid dividends; and

(h)     all guarantees of such Person in respect of any of the foregoing.

"**Lender**" has the meaning assigned in the preamble.

"**Investments**" means, as to any Person, any direct or indirect acquisition or investment by such Person, whether by means of (a) the purchase or other acquisition of equity interests of another Person, (b) a loan, advance or capital contribution to, guarantee or assumption of debt of, or purchase or other acquisition of any other debt or interest in, another Person (including any partnership or joint venture interest in such other Person and any arrangement pursuant to which the investor guaranties Indebtedness of such other Person), or (c) the purchase or other acquisition (in one transaction or a series of transactions) of assets of another Person which constitute all or substantially all of the assets of such Person or of a division, line of business or other business unit of such Person.  For purposes of covenant compliance, the amount of any Investment shall be the amount actually invested, without adjustment for subsequent increases or decreases in the value of such Investment.

"**Liens**" means any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or otherwise), charge or preference, priority or other security interest or preferential arrangement in the nature of a security interest of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to real property and any financing lease having substantially the same economic effect as any of the foregoing).

"**Loan**" has the meaning assigned in the preamble.

"**Loan Documents**" means (i) this Note, (ii) the Guarantee Agreement, (iii) the Collateral Documents, and (iv) all other certificates, agreements, documents, and instruments executed and delivered by or on behalf of any Loan Party pursuant to the foregoing.

"**Loan Parties**" means, collectively, the Borrower and each Guarantor.

"**Maturity Date**" means the date that is six (6) months after the date hereof, or if such day is not a Business Day, the next succeeding Business Day.

"**Net Cash Proceeds**" means the aggregate cash or cash equivalent proceeds received by any Loan Party or any subsidiary in respect of any disposition (including pursuant to any eminent domain or condemnation proceeding) or issuance of Indebtedness, net of (a) direct costs incurred in connection therewith (including, without limitation, legal, accounting and investment banking fees and sales commissions), (b) taxes paid or payable as a result thereof and (c) in the case of any disposition, the amount necessary to retire any Indebtedness secured by a Permitted Lien (ranking senior to any Lien of the Lender) on the related property; it being understood that "Net Cash Proceeds" shall include, without limitation, any cash or cash equivalents received upon the sale or other disposition of any non-cash consideration received by any Loan Party or any subsidiary in any disposition or issuance of Indebtedness.

"**Note**" has the meaning assigned in the preamble.

"**Obligations**" means (a) all advances to, and debts, liabilities, obligations, covenants and duties of, any Loan Party arising under any Loan Document or otherwise with respect to the Loan and (b) all costs and expenses incurred in connection with enforcement and collection of the foregoing, including the fees, charges and disbursements of counsel, in each case whether direct or indirect (including those acquired by assumption), absolute or contingent, due or to become due, now existing or hereafter arising and including interest and fees that accrue after the commencement by or against any Loan Party or any affiliate thereof pursuant to any proceeding under any Debtor Relief Laws naming such Person as the debtor in such proceeding, regardless of whether such interest and fees are allowed claims in such proceeding.

"**Permitted Indebtedness**" has the meaning assigned in Section 11(b).

"**Permitted Liens**" means:

(a)    Liens created by the Loan Documents;

(b)    Liens for taxes, assessments or charges imposed by any Governmental Authority that are not yet due or which are being contested in good faith and by appropriate proceedings diligently conducted, if adequate reserves with respect thereto are maintained on the books of the applicable Loan Party in accordance with GAAP;

(c)    statutory Liens such as carriers', warehouseman's, mechanics', materialmen's, repairmen's, or other like Liens arising in the ordinary course of business which are not overdue for a period of more than thirty (30) days or which are being contested in good faith and by appropriate proceedings diligently conducted, if adequate reserves with respect thereto are maintained on the books of the applicable Person; provided, that a reserve or other appropriate provision shall have been made therefor;

(d)    pledges or deposits in the ordinary course of business in connection with workers' compensation, unemployment insurance, and other social security legislation;

(e)    deposits to secure the performance of bids, trade contracts, and leases (other than Indebtedness), statutory obligations, surety and appeal bonds, performance bonds, and other obligations of a like nature incurred in the ordinary course of business;

(f)    Liens securing judgments for the payment of money (or appeal or other surety bonds relating to such judgments) not constituting an Event of Default;

(g)    bankers' Liens, rights of setoff and other similar Liens existing solely with respect to cash and cash equivalents on deposit in one or more accounts maintained by the Borrower or any of its subsidiaries, in each case in the ordinary course of business in favor of the bank or banks with which such accounts are maintained, securing solely the customary amounts owing to such bank with respect to cash management and operating account arrangements; provided, that in no case shall any such Liens secure (either directly or indirectly) the repayment of any Indebtedness;

(h)     any interest or title of a lessor, licensor, or sublessor under any lease, license, or sublease entered into by any Loan Party in the ordinary course of business and covering only the assets so leased, licensed, or subleased;

(i)     Liens of a collection bank under Section 4-210 of the UCC on items in the course of collection;

(j)     customary Liens in favor of customs and revenue authorities or brokers to secure payment of customs duties in connection with the importation of goods in the ordinary course of business;

(g)     easements, rights-of-way, restrictions and other similar encumbrances affecting real property which, in the aggregate, are not substantial in amount, and which do not in any case materially detract from the value of the property subject thereto or materially interfere with the ordinary conduct of the business of the applicable Person;

(h)     any zoning, building or similar laws or rights reserved to or vested in any Governmental Authority;

(i)     Liens that are contractual rights of setoff under agreements entered into with customers of Loan Parties in the ordinary course of business; and

(j)     Liens securing Indebtedness permitted under Section 11(b)(v); provided, that (i) such Liens do not at any time encumber any property other than the property financed by such Indebtedness and (ii) the Indebtedness secured thereby does not exceed the cost or fair market value, whichever is lower, of the property being acquired, determined as of the date of acquisition.

"**Person**" means any individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"**Plan**" means the [*First Amended Joint Plan of Reorganization of Alex and Ani, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*], dated as of [●], 2021, filed in *In re Alex and Ani, LLC*, et al., case no. 21-10918 (CTG) (jointly administered), in the Bankruptcy Court, as amended, supplemented or modified from time to time.

"**Security Agreement**" means the pledge and security agreement, dated as of the date hereof, executed by each of the Loan Parties in favor of the Lender.

"**Specified Shareholders**" means (i) LC A&A Holdings, Inc., or (ii) any Person (other than a natural person) controlled by and substantially all of the interests in which are owned, directly or indirectly, by, the entity named in clause (i) above.

"**Transactions**" has the meaning assigned in Section 4.

"**UCC**" means the Uniform Commercial Code as in effect in the State of New York; provided, that if perfection or the effect of perfection or non-perfection or the priority of any security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a

jurisdiction other than the State of New York, "**UCC**" means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions hereof relating to such perfection, effect of perfection or non- perfection or priority.

References herein to a provision of law or statutory enactment are (unless the context otherwise requires) a reference to that provision or enactment as amended or re-enacted.

2.      *Payments.*  (a) The Borrower hereby unconditionally promises to pay to the Lender the entire outstanding principal amount of the Loan, all accrued and unpaid interest thereon and all other unpaid amounts and Obligations that may be due or outstanding under any Loan Documents on the Maturity Date (it being understood that such amounts may be reduced as set forth in Section 2(b) below).

(b)      Prepayments made in accordance with Section 5 or 6 below shall be applied first, to the payment of all accrued but unpaid interest in respect of principal amounts repaid and second, to the remaining principal on the Loan.

3.      *Interest Rate.*  The Loan shall bear interest at a rate per annum equal to 13.00%, which shall be payable on the last Business Day of each calendar month (commencing with the month ending [October 31], 2021) and on the Maturity Date in arrears by adding the accrued amount thereof to the outstanding principal balance of the Note, after which such interest shall thereafter be deemed principal bearing interest; provided, that in the case of any overdue amounts of principal or interest, the Borrower shall pay interest on such overdue amounts, on demand by the Lender, at a rate per annum equal to the ordinary interest rate provided above, plus an additional 2.00% per annum.

4.      *Use of Proceeds.*  The proceeds of the Loan will be used by the Loan Parties as soon as practicable after receipt solely to satisfy Allowed Administrative Claims pursuant to the Plan (the "**Transactions**").

5.      *Optional Prepayments.*  The Borrower shall have the right at any time to prepay the Loan in whole or in part without premium or penalty.

6.      *Mandatory Prepayments.*  The Loan Parties shall immediately prepay the Loan with 100% of the Net Cash Proceeds received by the Loan Parties in connection with any of the following events:

(a)      any sale of their properties or assets, whether or not such sale was permitted under this Note (other than a sale of properties or assets pursuant to Sections 11(h)(ii), 11(h)(iii), 11(h)(iv), 11(h)(v), 11(h)(vii), 11(h)(ix) and 11(h)(xi)), for which no prepayment shall be required under this clause (a)); provided, that so long as no Default or Event of Default shall have occurred and be continuing, such Net Cash Proceeds shall not be required to be so applied until the aggregate amount of Net Cash Proceeds derived from any such sale, when taken together with the Net Cash Proceeds of any insurance or condemnation payments received by the Loan Parties in respect of their properties or assets, in any fiscal year of the Borrower is equal to or greater than $50,000;

(b)      any insurance or condemnation payments received by the Loan Parties in respect of their properties or assets; provided, that so long as no Default or Event of Default shall

have occurred and be continuing, such Net Cash Proceeds shall not be required to be so applied until the aggregate amount of Net Cash Proceeds derived from any such insurance or condemnation payments, when taken together with the Net Cash Proceeds received by the Loan Parties in connection with any sale of their properties or assets, whether or not such sale was permitted under this Note (other than a sale of properties or assets pursuant to Sections 11(h)(ii), 11(h)(iii), 11(h)(iv), 11(h)(v), 11(h)(vii), 11(h)(ix) and 11(h)(xi)), in any fiscal year of the Borrower is equal to or greater than $50,000; and

(c)     any debt for borrowed money incurred by the Loan Parties (other than Permitted Indebtedness).

7.     *General Provisions Regarding Payments.*  The Borrower will pay all Obligations free and clear of and without reduction for any taxes, levies, imposts, deductions, withholdings or charges and without set-off or counterclaim, in United States dollars available the same day in New York, New York.  Payments received that are insufficient to pay amounts then due shall be applied <u>first</u> to payment of fees, expenses and indemnification obligations to the Lender, <u>second</u> to interest then due and payable and <u>third</u> to remaining principal on the Loan.

8.     *Conditions Precedent.*  The obligation of the Lender to make the Loan on the date hereof is subject to the satisfaction (or waiver by Lender) of the following conditions precedent:

(a)     the Lender shall have received the following documents, each of which shall be in form and substance satisfactory to the Lender:

(i)     <u>Note</u>.  This Note duly executed by the Borrower;

(ii)     <u>Guarantee Agreement</u>.  Counterparts of the Guarantee Agreement duly executed by each of the Guarantors;[1]

(iii)     <u>Security Agreement</u>.  Counterparts of the Security Agreement duly executed by each of the Loan Parties;

(iv)     <u>Corporate Documents</u>.     Certificates of the appropriate Governmental Authority as to the good standing of the Loan Parties in their jurisdiction of organization, certified copies of the Loan Parties' charter and by-laws (or the equivalent documents) and resolutions authorizing the execution, delivery and performance of each Loan Document to which the Loan Parties are a party;

(v)     <u>Legal Opinions of Counsel</u>.  An opinion or opinions of counsel for each of the Loan Parties, dated as of the date hereof and addressed to the Lender, in form and substance acceptable to the Lender;

(vi)     <u>UCC Financing Statements</u>.  Completed UCC financing statements for each appropriate jurisdiction as is necessary, in the Lender's discretion, to perfect the Lender's security interest in the Collateral;

---

[1] To include all subsidiaries.

(vii)    Other Collateral Documents.  To the extent required to be delivered, filed, registered, or recorded pursuant to the terms and conditions of the Collateral Documents, all instruments, documents, and chattel paper in the possession of any of the Loan Parties, together with alonges or assignments as may be necessary or appropriate to create and perfect the Lender's security interest in the Collateral; and

(viii)    Other Documents.  Such other certificates, documents, opinions and instruments relating to the Transactions as the Lender may request in its sole discretion;

(b)    Fees and Expenses.  The Lender shall have received payment of all fees and expenses required to be paid or reimbursed in connection with the negotiation, preparation, execution and delivery of this Note and the other Loan Documents, including, without limitation, the fees and expenses of Paul, Weiss, Rifkind, Wharton & Garrison LLP (counsel to the Lender) and Young Conaway Stargatt & Taylor, LLP (Delaware counsel to the Lender).

(c)    Representations and Warranties.  Each of the representations and warranties in the Loan Documents, including without limitation Section 9 hereof, shall (i) with respect to representations and warranties that contain a materiality qualification, be true and correct on and as of the date hereof, and (ii) with respect to representations and warranties that do not contain a materiality qualification, be true and correct in all material respects on and as of the date hereof.

(d)    Default.  No Default shall exist, or would immediately result from the Loan or application of the proceeds thereof.

(e)    Confirmation Order.  The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Lender and shall not have been reversed, stayed, modified, dismissed, vacated or reconsidered, in each case without the consent of the Lender.

(f)    Plan.  Each of the conditions precedent to the Effective Date (as defined in the Plan) under the Plan shall have been satisfied, and the Effective Date shall have occurred.

9.    *Representations and Warranties.*  In order to induce the Lender to make the Loan, Borrower represents and warrants to the Lender:

(a)    The Loan Parties are duly organized, validly existing and in good standing under the laws of the jurisdiction of their organization and have all requisite power and authority to carry on their business as now conducted and to consummate the Transactions.

(b)    The execution, delivery and performance by the Guarantors of the Guarantees and the consummation of the Transactions are within the Guarantors' corporate powers and have been duly authorized by all necessary corporate action.

(c)    The execution, delivery and performance by the Loan Parties of the Loan Documents and the consummation of the Transactions do not and will not (i) violate (x) any material law or governmental rule or regulation applicable to the Loan Parties, (y) the charter or by-laws (or equivalent documents) of the Loan Parties, or (z) any order, judgment or decree of any court or other Governmental Authority binding on the Loan Parties; (ii) conflict with, result in a

breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation of the Loan Parties or under the Plan or the Confirmation Order; (iii) result in or require the creation or imposition of any Lien (other than Permitted Liens) upon any of the properties or assets of the Loan Parties; or (iv) require any approval of stockholders, members or partners or any approval or consent of any Person under any contractual obligation of the Loan Parties, or any registration with, consent or approval of, or notice to, or other action to, with or by, any Governmental Authority, except for such approvals or consents which have been obtained on or before the date hereof.

(d)     The equity interests of the Loan Parties have been duly authorized and validly issued and are fully paid and nonassessable.  As of the date hereof, there is no existing option, warrant, call, right, commitment or other agreement to which the Loan Parties are a party requiring, and there is no membership interest or other equity interests of the Loan Parties outstanding which upon conversion or exchange would require the issuance by the Loan Parties of any additional membership interests or other equity interests of the Loan Parties or other securities convertible into, exchangeable for or evidencing the right to subscribe for or purchase a membership interest or other equity interest of the Loan Parties.

(e)     The Loan Documents have been duly executed and delivered by the Loan Parties, as applicable, and constitute the legal, valid and binding obligations of the Loan Parties, as applicable, enforceable in accordance with such Loan Documents' terms, subject to applicable Debtor Relief Laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

(f)     There are no actions, suits or proceedings pending or, to the knowledge of the Borrower threatened, against or affecting the Loan Parties or any of their properties before any Governmental Authority that could have a reasonable likelihood of resulting in liabilities in excess of $100,000.

(g)     All tax returns and reports of the Loan Parties required to be filed by the Loan Parties have been timely filed, and all taxes shown on such tax returns to be due and payable and all assessments, fees and other governmental charges upon the Loan Parties and their respective properties, assets, income, businesses and franchises which are due and payable have been paid when due and payable, except those which are being contested in good faith by appropriate proceedings diligently conducted and for which adequate reserves have been provided in accordance with GAAP.

(h)     The Loan Parties have no Indebtedness other than Permitted Indebtedness.

(i)     The Loan Parties are in compliance in all material respects with all applicable material statutes, regulations and orders of, and all applicable restrictions imposed by, all Governmental Authorities, in respect of the conduct of their business (including compliance with all applicable material Environmental Laws governing their business and the requirements of any permits issued under such Environmental Laws).  The Borrower is not aware of, nor has the Borrower received notice of, any events, conditions, circumstances, activities, practices, incidents, actions or plans which may interfere with or prevent continued compliance by the Loan Parties

with, or which are reasonably likely to give rise to any material liability for the Loan Parties under, any Environmental Laws.

(j)      The Loan Parties have obtained all necessary licenses and permits to operate their businesses as the Loan Parties now conduct their businesses.

(k)      No Loan Party is in default under or with respect to, or party to, any contractual obligation that, individually or in the aggregate, is material.  No Default or Event of Default has occurred and is continuing or would immediately result from the consummation of the Transactions and the other transactions contemplated by this Note and the other Loan Documents.

(l)      No information, report, financial statement, exhibit, schedule or disclosure (including the Disclosure Statement) furnished in writing by or on behalf of the Loan Parties to the Lender in connection with the negotiation, preparation or delivery of this Note and the other Loan Documents or included therein or delivered pursuant thereto contains any material misstatement of material fact or omits to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading; provided, that with respect to projected financial information, each Loan Party represents only that such information was prepared in good faith based upon assumptions believed to be reasonable at the time.

(m)      The Collateral Documents are effective to create in favor of the Lender a legal, valid, enforceable and perfected first-priority (subject only to Permitted Liens) security interest in all right, title and interest of the Loan Parties (other than Holdings), subject to no other Lien, except for Permitted Liens.  Except for filings to be completed on or prior to the date hereof and as contemplated hereby and by the Collateral Documents, no filing or other action will be necessary to perfect or protect the Liens created by the Collateral Documents.

10.      *Affirmative Covenants.*  So long as any Obligations are outstanding, the Borrower shall, and shall cause each of the other Loan Parties to:

(a)      furnish to the Lender as soon as available, but in any event within one hundred twenty (120) days after the end of each fiscal year of the Borrower, a consolidated balance sheet of Holdings and its subsidiaries as at the end of such fiscal year, and the related consolidated statements of income or operations, changes in shareholders' equity and cash flows for such fiscal year, setting forth in each case in comparative form the figures for the previous fiscal year, all in reasonable detail and prepared in accordance with GAAP, such consolidated statements to be audited and accompanied by a report and opinion of an independent certified public accountant of nationally recognized standing reasonably acceptable to the Lender, which report and opinion shall be prepared in accordance with generally accepted auditing standards.  For the avoidance of doubt, such report and opinion may be subject to a "going concern" or like qualification or exception or any qualification or exception as to the scope of such audit;

(b)      furnish to the Lender as soon as available, but in any event within forty-five (45) days after the end of each of the first three fiscal quarters of each fiscal year of the Borrower and sixty (60) days after the end of the fourth fiscal quarter of each fiscal year of the Borrower, commencing with the fiscal quarter ending [●], 2021, a consolidated balance sheet of Holdings

and its subsidiaries as at the end of such fiscal quarter, and the related consolidated statements of income or operations, changes in cash flows for such fiscal quarter and for the portion of the Borrower's fiscal year then ended, setting forth in each case in comparative form the figures for the corresponding fiscal quarter of the previous fiscal year and the corresponding portion of the previous fiscal year, all in reasonable detail and prepared in accordance with GAAP, such consolidated statements to be certified by the chief executive officer, chief financial officer, treasurer or controller who is a responsible officer of the Borrower as fairly presenting the financial condition, results of operations, shareholders' equity and cash flows of Holdings and its subsidiaries, subject only to normal year- end audit adjustments and the absence of footnotes;

(c)     furnish to the Lender as soon as available, but in any event within forty-five (45) days after the end of each month, commencing with the month ending [●], 202[1], a consolidated balance sheet of Holdings and its subsidiaries as at the end of such month, and the related consolidated statements of income or operations, changes in cash flows for such month and for the portion of the Borrower's fiscal year then ended, setting forth in each case in comparative form the figures for the corresponding month of the previous fiscal year and the corresponding portion of the previous fiscal year, all in reasonable detail and prepared in accordance with GAAP. Such consolidated statements shall be certified by the chief executive officer, chief financial officer, treasurer or controller who is a responsible officer of the Borrower as fairly presenting the financial condition, results of operations, shareholders' equity and cash flows of Holdings and its subsidiaries, subject only to normal year-end audit adjustments and the absence of footnotes;

(d)     furnish to the Lender, promptly after having received knowledge of the same, written notice of any of the following:

(i)     the occurrence of any Default;

(ii)     the commencement or threatened (in writing) commencement of any litigation or investigation and of any proceedings before any Governmental Authority affecting any Loan Party that would have a reasonable likelihood of resulting in liabilities in excess of $100,000; and

(iii)     the occurrence of any event or change that has caused or evidences, either in any case or in the aggregate, a material and adverse effect on (w) the business, assets, prospects, properties or financial condition of any Loan Party; (x) the ability of any Loan Party to fully and timely perform its obligations hereunder; (y) the legality, validity, binding effect or enforceability of any Loan Document; or (z) the rights, remedies and benefits available to, or conferred upon, the Lender under any Loan Document.

(e)     furnish to the Lender from time to time such other information regarding the business, financial, legal or corporate affairs of any Loan Party or any subsidiary thereof, or compliance with the terms of the Loan Documents, as the Lender may reasonably request.

(f)     permit the Lender, or its employees, accountants, attorneys or agents, in each case at the Borrower's expense, to examine and inspect the financial statements and related books, records and registers of the Loan Parties at any time during ordinary business hours upon reasonable notice.

(g)    (i) comply in all material respects with the requirements of applicable laws and regulations (including national, supranational and local tax laws) and (ii) comply in all respects with all Environmental Laws and obtain any permits, licenses or similar approvals required by any such Environmental Laws.

(h)    obtain and at all times maintain insurance with reputable national insurers, in such amounts and against such risks as are usually carried by Persons owning and operating like companies in the United States with similar business lines to the Alex and Ani Lines of Business.

(i)    at any time or from time to time upon the request of the Lender, execute, acknowledge, deliver, record, re-record, re-file, register and re-register such further documents, certificates, assurances, and instruments, and do such other acts and things, as the Lender may reasonably request in order to (i) effect fully the purposes of this Note and the other Loan Documents, (ii) subject any Loan Party's properties, assets, rights or interests to the Liens now or hereafter intended to be covered by any of the Collateral Documents, (iii) perfect and maintain the validity, effectiveness, and priority of any of the Collateral Documents and any of the Liens intended to be created thereunder, or (iv) assure, convey, grant, assign, transfer, preserve, protect, and confirm more effectively unto the Lender the rights granted or now or hereafter intended to be granted to the Lender under any Loan Document or under any other instrument executed in connection with any Loan Document to which any Loan Party is or is to be a party, and cause each of its subsidiaries to do so.  In furtherance and not in limitation of the foregoing, the Guarantors shall take such actions as the Lender may reasonably request from time to time to ensure that Holdings, other Guarantor, and each subsidiary of the Borrower (x) is party to and guarantees the Obligations pursuant to the Guarantee Agreement and (y) is party to and grants to the Lender a security interest in all Collateral pursuant to the Security Agreement.

(j)    comply in all respects with the terms of the Plan and the Confirmation Order.

(k)    the Loan Parties shall at times preserve and maintain their corporate existence and all material rights, privileges and franchises.

11.    *Negative Covenants.*  So long as any Obligations are outstanding, the Loan Parties will not:

(a)    engage in any material line of business other than the Alex and Ani Lines of Business.

(b)    incur or suffer to exist any Indebtedness, except for the following (the "Permitted Indebtedness"):

(i)    the Obligations (including the Guarantees);

(ii)    unsecured Indebtedness of a Loan Party owed to another Loan Party, which Indebtedness shall (i) to the extent required by the Lender, be evidenced by promissory notes which shall be pledged as Collateral for the Obligations in accordance with the terms of the Security Agreement, (ii) be on terms acceptable to the Lender and (iii) be otherwise permitted under the provisions of Section 11(i);

(iii)    Indebtedness arising from the endorsement of instruments or other payment items for deposit and in respect of netting services or overdraft protection or in connection with deposit accounts or securities accounts maintained with financial institutions incurred in the ordinary course of business that are promptly repaid;

(iv)    Indebtedness in respect of letters of credit entered into in the ordinary course of business with an original face amount for all such letters of credit not to exceed $100,000 at any time outstanding;

(v)    Indebtedness in respect of capitalized leases and purchase money obligations for fixed or capital assets within the limitations set forth in clause (j) of the definition of "Permitted Liens"; provided, that the aggregate amount of all such Indebtedness at any one time outstanding shall not exceed $100,000; and

(vi)    guarantees of any Loan Party in respect of Indebtedness of any Loan Party otherwise permitted hereunder;

(vii)    other Indebtedness not to exceed $100,000 at any time outstanding.

(c)    create, assume or suffer to exist any Lien (other than Permitted Liens) on any asset or property now owned or hereafter acquired by it.

(d)    form or acquire any subsidiary on or after the date hereof.

(e)    consolidate with, merge into or acquire any equity interests of any other Person.

(f)    amend their certificates of incorporation or by-laws (or equivalent document) in any manner which would reasonably be expected to adversely affect the Lender in any material respect.

(g)    liquidate, dissolve or suspend business operations.

(h)    sell, lease, assign, sublet, transfer or otherwise dispose (including pursuant to any eminent domain or condemnation proceeding) of all or any material part of their assets (whether in one transaction or in a series of transactions) to any other Person, except:

(i)    sales or other dispositions of surplus, non-functional, worn-out or obsolete assets;

(ii)    sales or other dispositions of any assets to another Loan Party;

(iii)    dispositions of accounts receivable in connection with the collection or compromise thereof;

(iv)    licenses, sublicenses, leases, subleases, easements and similar rights granted to others not interfering in any material respect with the business of the Borrower and its subsidiaries;

(v)     the sale or disposition of cash equivalents for fair market value;

(vi)     any loss of, damage to or destruction of any assets of any Loan Party; and

(vii)     sales of inventory in the ordinary course of business;

(viii)     any condemnation, seizure or taking, by exercise of the power of eminent domain or otherwise, of any assets, or confiscation of such assets or the requisition of the use of such assets;

(ix)     dispositions of equipment or real property to the extent that (i) such property is exchanged for credit against the purchase price of similar replacement property or (ii) the proceeds of such disposition are reasonably promptly applied to the purchase price of such replacement property;

(x)     dispositions of accounts receivable to a third party in connection with the compromise, settlement or collection thereof in the ordinary course of business exclusive of factoring or similar arrangements so long as (i) the account debtor with respect thereto has instituted or consented to the institution of any proceeding under any Debtor Relief Law and (ii) all such dispositions do not exceed $[100,000] in the aggregate in any fiscal year;

(xi)     Investments permitted by Section 11(i) to the extent constituting a disposition of assets.

(i)     make or hold any Investments in any other Person, except:

(i)     Investments held by the Borrower and its subsidiaries in the form of cash or cash equivalents;

(ii)     Investments by the Loan Parties in any other Loan Party;

(iii)     Investments consisting of extensions of credit in the nature of accounts receivable or notes receivable arising from the grant of trade credit in the ordinary course of business, and Investments received in satisfaction of or partial satisfaction thereof from financially troubled account debtors to the extent reasonably necessary in order to prevent or limit loss;

(iv)     Investments (including debt obligations) received in connection with the bankruptcy or reorganization of suppliers and customers and in settlement of delinquent obligations of, and other disputes with, customers and suppliers arising in the ordinary course of business; and

(v)     guarantees permitted by Section 11(b);

(vi)     Investments received as consideration for a disposition of any assets permitted by Section 11(h);

(vii)    other Investments not to exceed $100,000 outstanding at any one time.

(j)    make any dividends, return of capital, repurchase or redemption of, or payments or distributions on account of their equity interests, except:

(i)    any such dividend, return of capital, repurchase or redemption, payment, or distribution made to the Borrower; and

(ii)    payments or distributions to Holdings for costs relating to corporate overhead and maintenance of existence.[2]

(k)    enter into any restrictive agreements (other than the Loan Documents) that prohibit any Guarantor from (w) making dividends, payments or distributions on account of the equity interests of such Guarantor, (x) guaranteeing the Loan or making any payment in respect of the Loan, (y) making loans or advances to the Borrower or (z) transferring any of its properties or assets to the Borrower.

(l)    make any Capital Expenditures in excess of $[100,000] in any fiscal year of the Borrower.

12.    *Events of Default.*  If any of the following events ("**Events of Default**") shall occur and be continuing:

(a)    the Borrower shall fail to make payment when due, whether at stated maturity, by acceleration or otherwise, of any principal on the Loan, or the Borrower shall fail to make payment of any interest or any other amount due hereunder on the Loan within three (3) Business Days after the same becomes due;

(b)    any Loan Party shall fail to observe any covenant contained in Section 10(d), 10(h), 10(k) or 11 of this Note;

(c)    any Loan Party shall fail to observe or perform any covenant contained in Section 10(a), 10(b) or 10(c) of this Note and such failure shall not have been cured within ten (10) days;

(d)    any Loan Party shall fail to observe or perform any other covenant contained in this Note or any other Loan Document and such failure shall not have been cured within thirty (30) days after the earlier of actual knowledge of the same or written notice from Lender;

(e)    any representation, warranty, certification or other statement made by any Loan Party herein or in any other Loan Document shall be false in any material respect as of the date made;

---

[2]    NTD: Consider whether basket for tax distributions is appropriate.
PW: Due to the short maturity, Lion does not believe these are appropriate or necessary.

(f)     (reserved);

(g)     any Loan Party shall default in the payment when due (after giving effect to any applicable grace periods) of any principal of or interest on any Indebtedness in excess of $100,000; or any event specified in any note, agreement, indenture or other document evidencing or relating to any Indebtedness shall occur if the effect of such event is to cause, or (after giving effect to any applicable grace periods) to permit the holder or holders of such Indebtedness (or a trustee or agent on behalf of such holder or holders) to cause, such Indebtedness to become due, or to be prepaid in full (whether by redemption, purchase, offer to purchase or otherwise), prior to its stated maturity;

(h)     any money judgment, writ or warrant of attachment or similar process in any jurisdiction involving in the aggregate at any time an amount in excess of $100,000 (to the extent not adequately covered by insurance as to which a solvent and unaffiliated insurance company has acknowledged coverage) shall be entered or filed against any Loan Party and shall remain undischarged, unvacated, unbonded, unappealed or unstayed for a period of sixty (60) days;

(i)     any Loan Party or any subsidiary thereof institutes or consents to the institution of any proceeding under any Debtor Relief Law, or makes an assignment for the benefit of creditors; or applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer for it or for all or any material part of its property; or any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer is appointed without the application or consent of such Person and the appointment continues undischarged or unstayed for sixty (60) calendar days; or any proceeding under any Debtor Relief Law relating to any such Person or to all or any material part of its property is instituted without the consent of such Person and continues undismissed or unstayed for sixty (60) calendar days, or an order for relief is entered in any such;

(j)     (i) any Loan Party or any subsidiary thereof becomes unable or admits in writing its inability or fails generally to pay its debts as they become due, or (ii) any writ or warrant of attachment or execution or similar process is issued or levied against all or any material part of the property of any such Person and is not released, vacated or fully bonded within sixty (60) days after its issue or levy; or

(k)     at any time after the execution and delivery thereof, (i) any Loan Document ceases to be in full force and effect (other than by reason of the satisfaction in full of the Obligations or otherwise in accordance with the terms thereof) or shall be declared null and void, or the Lender shall not have or shall cease to have a valid and perfected first-priority (subject to Permitted Liens) Lien in the Collateral purported to be covered thereby (to the extent perfection is required pursuant to the terms hereunder or thereunder), in each case except where such failure is the result of the action or inaction of Lender that was not caused by an act or omission by the Loan Parties, or (ii) prior to the satisfaction in full of the Loan Parties' obligations under the Loan Documents, any Loan Party shall contest in any manner the validity or enforceability of, or purport to revoke, terminate, or rescind any provision of, any Loan Document in writing or deny in writing that it has any further liability under any Loan Document, or shall contest the validity or perfection of any Lien in the Collateral purported to be covered by Collateral Documents;

THEN, in the case of any Event of Default specified above, the Lender may, by written notice to the Borrower, declare the Loan to be forthwith due and payable, together with accrued interest, whereupon the same shall become forthwith due and payable, without demand, protest, presentment, notice of dishonor or any other notice or demand whatsoever, all of which are hereby waived by the Borrower; <u>provided</u>, that in the case of the Events of Default specified in clause (i) above, without any notice to the Borrower or any other act of the Lender, the Loan shall automatically become forthwith due and payable, together with accrued interest, without demand, protest, presentment, notice of dishonor or any other notice or demand whatsoever, all of which are hereby waived by the Borrower.

13.    *Notices.*  Any notice to be given under this Note shall be in writing and shall be deemed to have been duly given when received by the recipient.

14.    *No Waiver.*  No delay on the part of the Lender in exercising any of its powers or rights, and no partial or single exercise, shall constitute a waiver thereof.

15.    *Amendments and Waivers.*  Any provision of this Note may be amended or waived, but only if such amendment or waiver is in writing and signed by the Lender and the Borrower.

16.    *Successors and Assigns.*  This Note shall be binding upon the Borrower and its successors and assigns, for the benefit of the Lender and its successors and assigns, except that the Borrower may not assign or otherwise transfer its rights or obligations under this Note without the prior written consent of the Lender.  The Lender may at any time assign to one or more Persons (each, an "**Assignee**") all or any portion of its rights under this Note; <u>provided</u>, that unless an Event of Default shall have occurred and be continuing, any such assignment shall not be made without the prior written consent of the Borrower.

17.    *Expenses, etc.*  The Borrower agrees to pay or reimburse the Lender for (a) all reasonable out-of-pocket costs and expenses of the Lender (including, without limitation, the reasonable fees and expenses of Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel to the Lender, and Young Conaway Stargatt & Taylor, LLP, Delaware counsel to the Lender) in connection with (i) the negotiation, preparation, execution and delivery of this Note and the other Loan Documents and the making of the Loan and (ii) the negotiation or preparation or any modification, supplement or waiver of any of the terms of this Note or any of the other Loan Documents (whether or not consummated); (b) all reasonable out-of-pocket costs and expenses of the Lender (including, without limitation, the reasonable fees and expenses of legal counsel) in connection with (i) any Default and any enforcement or collection proceedings resulting therefrom, including, without limitation, all manner of participation in or other involvement with (x) bankruptcy, insolvency, sequestration, receivership, foreclosure, winding up or other liquidation proceedings, (y) judicial or regulatory proceedings and (z) workout, restructuring or other negotiations or proceedings (whether or not the workout, restructuring or transaction contemplated thereby is consummated) and (b) the enforcement of this Section 17; and (c) all transfer, stamp, documentary or similar taxes, assessments or charges levied by any Governmental Authority in respect of this Note or any of the other Loan Documents or any other document referred to herein or therein and all costs, expenses, taxes, assessments and other charges incurred in connection with any filing, registration, recording or perfection of any security interest contemplated by any Loan Document or any other document referred to therein.

The Loan Parties will indemnify the Lender and its affiliates and each of their respective directors, trustees, officers, employees, attorneys and agents from, and hold each of them harmless against, any and all losses, liabilities, claims, damages or expenses incurred by any of them (including, without limitation, any and all losses, liabilities, claims, damages or expenses incurred by the Lender, whether or not the Lender is a party thereto) arising out of or by reason of any investigation or litigation or other proceedings (including any threatened investigation or litigation or other proceedings) relating to the Loan or any actual or proposed use by the Loan Parties of the proceeds of the Loan, including, without limitation, the reasonable fees and disbursements of counsel incurred in connection with any such investigation or litigation or other proceedings (but excluding any losses, liabilities, claims, damages or expenses incurred by reason of the gross negligence or willful misconduct of the Person to be indemnified). Without limiting the generality of the foregoing, the Loan Parties will indemnify the Lender from, and hold the Lender harmless against, any losses, liabilities, claims, damages or expenses described in the preceding sentence (excluding, as provided in the preceding sentence, any loss, liability, claim, damage or expense incurred by reason of the gross negligence or willful misconduct of the Person to be indemnified) arising under any Environmental Laws as a result of the past, present or future operations of the Loan Parties (or any predecessor in interest to the Loan Parties), or the past, present or future condition of any site or facility owned, operated or leased at any time by the Loan Parties (or any such predecessor in interest), or any release or threatened release of any hazardous materials at or from any such site or facility, including any such release or threatened release that shall occur during any period when the Lender shall be in possession of any such site or facility following the exercise by the Lender of any of its rights and remedies hereunder or under the Collateral Documents.

18.    *GOVERNING LAW.*    THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES THEREOF.

19.    *Submission to Jurisdiction.*  The Borrower and, by its acceptance of this Note, the Lender, each agree as follows:

(a)    each such party hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and the United States District Court for the Southern District of New York, and any relevant appellate court, in any action or proceeding arising out of or relating to this Note, or for recognition or enforcement of any judgment, and each such party hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in New York State court or, to the extent permitted by law, in such federal court; provided, that nothing in this Note shall affect any right that the Lender or the Borrower may otherwise have to bring any action or proceeding relating to this Note against the other party or its properties in the courts of any jurisdiction; and

(b)    each such party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Note in any court referred to in subsection (a) of this Section, and each such party also irrevocably waives, to

the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding in any such court.

20.     *WAIVER OF JURY TRIAL*.  THE BORROWER HEREBY WAIVES AND, BY ITS ACCEPTANCE OF THIS NOTE, THE LENDER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OTHER LOAN DOCUMENT.

21.     *Severability*.  If any provision or this Note or any other Loan Document is held to be invalid, illegal or unenforceable, the other provisions of this Note or the applicable Loan Document, as the case may be, shall remain in full force and effect.

22.     *Usury Savings*.  Notwithstanding anything herein to the contrary or otherwise, the Lender shall never be entitled to receive as interest on the obligation evidenced hereby any amount in excess of the maximum rate of interest permitted to he charged by applicable law.  In the event that the Lender ever receives any such excess, such amount which would be excessive interest shall be applied to the reduction of the principal sum hereof, and if the principal sum is paid in full, any remaining excess shall forthwith be paid to the Borrower.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above,

**Alex and Ani, LLC**

_____

Name:
Title:


Address for notices:

10 Briggs Drive
East Greenwich, RI 02818